UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

FRANCES R. SMITH

VERSUS

BOARD OF SUPERVISORS FOR
SOUTHERN UNIVERSITY, ET AL.

CIVIL ACTION

NO. 14-572-JJB-RLB

**RULING ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment (Doc. 12) brought by Defendants, Board of Supervisors for Southern University ("Board") and A&M College System (collectively referred to as "defendants"). Plaintiff, Frances Smith ("Smith"), filed an opposition (Doc. 17) and the defendants filed a reply brief (Doc. 18). Oral argument is unnecessary. The Court's jurisdiction exists pursuant to 28 U.S.C. § 1331. For the reasons stated herein, the defendants' Motion for Summary Judgment (Doc. 12) is **GRANTED**.

I.  **BACKGROUND**

The summary judgment evidence establishes that at all relevant times Smith was employed by the Southern University System ("SUS"), Office of the President, as the Special Assistant and Counselor to the President. In this position, Smith performed several tasks including providing legal counsel to the President of the University System. From 2005 to 2009, Ralph Slaughter ("Slaughter") served as the SUS President.

In 2007, Slaughter requested advice from Smith regarding alleged sexual harassment of an SUS employee by a Board member. Specifically, Slaughter wanted to know whether Southern's sexual harassment policy required him to report the allegations and, if so, to whom. According to Smith, she informed Slaughter that he should report the allegations to "a level where somebody can do something about it . . . ." *Smith Dep.* 76:7–13, Doc. 17-2.

1

In 2007, Slaughter was involved in Title VII litigation ("2007 Slaughter litigation") against the Board relating to Slaughter reporting the alleged sexual harassment. After being subpoenaed, Smith testified at the preliminary injunction hearing about the conversation with Slaughter advising him on Southern's policies for reporting sexual harassment allegations. Two years later, in 2009, the Board elected not to renew Slaughter's contract as the SUS President, and appointed Kassie Freeman ("Freeman") as SUS's interim President. After beginning her term, Freeman learned of budget cuts affecting SUS and began formulating a Reorganization Plan to help deal with the budget reductions. The Reorganization Plan called for several personnel cuts and changes.

After testifying in the 2007 Slaughter litigation, Smith retained her position at Southern for two years. During this time period Smith received two pay raises. On August 22, 2009, the Board approved the Reorganization Plan which included, among other things, the elimination of Smith's position as Special Assistant and Counsel to the President. The Reorganization Plan also changed the title and duties of Smith's position to the newly created position of Executive Counsel. Hired in the new position was 47 year old Tracie Woods ("Woods"). Smith was 64 years old when she was terminated.

Smith filed this case alleging retaliation under Title VII of the Civil Rights Act of 1964 for testifying in the 2007 Slaughter litigation, and alternatively, age discrimination under the Age Discrimination in Employment Act ("ADEA"). Defendants now bring the present motion arguing that they are entitled to summary judgment on all of Smith's claims.

**II.    SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case.  *Id.*  The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case.  *Id.*  A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute."  Fed. R. Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden.  *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996).  Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence."  *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991).  If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party.  *Celotex*, 477 U.S. at 322–23.

### III.  DISCUSSION

In regards to Smith's Title VII retaliation claim, the defendants argue two bases for granting summary judgment: (1) Smith's testimony in the 2007 Slaughter litigation does not constitute a Title VII protected activity; and (2) there is no causal connection between Smith's

2007 testimony and her 2009 termination. *Defs.' Supp. Mem.*, Doc. 12-9. Smith responds by asserting that her 2007 testimony is a Title VII protected activity and the causal element can be established by direct evidence of retaliatory animus. *Pl.'s Opp'n*, Doc. 17.

On Smith's age discrimination claim, the defendants argue that summary judgment should be granted because Smith's subjective belief of discrimination is insufficient to establish a prima facie case under the ADEA. *Defs.' Supp. Mem.* 18–19, Doc. 12-9. Smith argues that a prima facie case has been demonstrated, but the defendants have failed to meet their burden of providing a legitimate, non-discriminatory reason for her termination. *Pl.'s Opp'n* 11–14, Doc. 17. Alternatively, Smith argues that the defendants' proffered reasons for termination are pretext. *Id.*

    a. **Title VII Retaliation**

A prima facie case for retaliation requires the plaintiff to show that (1) she participated in a protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). If the plaintiff cannot support all three elements, then summary judgment for the defendant is appropriate. *Id.* Here, it is undisputed that Smith's termination constitutes an adverse employment action. The parties dispute whether Smith's testimony in the 2007 Slaughter litigation is a Title VII protected activity and, if so, whether Smith can establish the required causation between that activity and her termination.

    i. *Protected Activity*

Concerning a "protected activity," Title VII states:

4

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has *opposed* any practice made an unlawful employment practice by [Title VII], *or* because he has made a charge, testified, assisted, or *participated* in any manner in an investigation, proceeding, or hearing under [Title VII].

42 U.S.C. § 3000(3)-3 (emphasis added). Accordingly, there are two clauses under which an activity can be deemed "protected" for purposes of Title VII—the opposition clause and the participation clause. *See Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304 (6th Cir. 1989). At issue in this case is the participation clause.

The participation clause itself has been interpreted as providing two separate avenues for coverage: (1) making a charge; and (2) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing. *USEEOC v. Bojangles Restaurant, Inc.*, 284 F. Supp. 2d 320, 327–28 (M.D.N.C. 2003) (citing *Booker*, 879 F.2d at 1312)). The second prong in the participation clause provides coverage for a broad array of activities, including "persons who assist other persons who directly engage in protected activity." *Id.* at 327–29. "Assist," in this context, "means providing voluntary or involuntary support in any manner to a person the employer believes to have engaged, or fears will be engaging, in protected activity." *Id.* at 329. Moreover, "[t]he assistance may, but need not, be actual assistance so long as it is proven that the employer perceives that assistance was or will be given . . . ." *Id.*; *see, e.g.*, *Johnston v. Harris Cty. Flood Control Dist.*, 869 F.2d 1565 (5th Cir. 1989) (affirming the district court's finding of liability under Title VII when the plaintiff was retaliated against for testifying in a co-worker's EEO hearing); *Shoaf v. Kimberly-Clark Corp.*, 294 F. Supp. 746, 756 (M.D.N.C. 2003) (holding, for purposes of summary judgment, that "Plaintiff has established that he engaged in a protected activity under Title VII by testifying on behalf of [co-worker] prior to Plaintiff's discharge from employment").

The fact surrounding Smith's testimony in the 2007 Slaughter litigation are undisputed and it is therefore appropriate for the Court to determine, as a matter of law, whether such testimony constitutes a Title VII protected activity. The defendants spent considerable time arguing that Smith's 2007 testimony does not constitute a protected activity because she did not "oppose" any illegal practices, as that term has been defined. *Defs.' Supp. Mem.* 9–13, Doc. 12-9. However, due to the dual nature of the statute, the plaintiff's actions need not have *opposed* an unlawful action of the defendant if such actions demonstrate that the plaintiff *participated* in any manner in a proceeding under Title VII. Therefore, despite the defendants' contentions, this case involves a claim for retaliation under the participation clause, not the opposition clause. Therefore, the relevant inquiry is whether Smith "testif[ied], assist[ed], or participat[ed] *in any manner* in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 3000(3)-3 (emphasis added). It is undisputed that Smith testified in Slaughter's Title VII litigation. Such testimony falls under the expansive purview of the participation clause. Therefore, as a matter of law, the Court finds that Smith's testimony in the 2007 Slaughter litigation constitutes a Title VII protected activity.[1]

---

[1] The defendants argue that Smith's testimony in the 2007 Slaughter litigation was solely a function of her duties as legal counsel to the President (i.e. Slaughter) and therefore does not constitute a protected activity under the Fifth Circuit's "Manager Rule." *Defs.' Supp. Mem.* 10, Doc. 12-9. The Fifth Circuit has recognized, in the context of the Fair Labor Standards Act ("FLSA"), "that an employee's communication does not constitute a *complaint* unless the employee 'somehow steps outside of his normal job role' so as to make clear to the employee that the employee is 'taking a position adverse to the employer.'" *Lasater v. Texas A&M University-Commerce*, 495 Fed. Appx. 458, 461–62 (5th Cir. 2012) (citations omitted) (emphasis added). This rule is especially important in the context of managers "because a managerial position 'necessarily involves being mindful of the needs and concerns of both sides and appropriately expressing them.' Thus, voicing 'concerns is not only *not adverse* to the company's interests, it is exactly what the company *expects* of a manager.'" *Id.* The Manager Rule, however, is inapplicable in this case for several reasons. First, the Court agrees with Smith that the FLSA has a separate and distinct anti-retaliation provision from Title VII, as highlighted by the FLSA's requirement for a "complaint" rather than Title VII's less formal "opposition" or "participation" requirements. Second, the policy rationale behind the rule is inapplicable to Smith's position at SUS because there is no indication that Smith actually voiced or reported concerns of SUS employees. Instead, Smith merely advised Slaughter on SUS's sexual harassment reporting requirements and testified as to that advice during the 2007 Slaughter litigation.

### ii. *Causation*

A Title VII retaliation claim applies the traditional but-for causation standard: "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). Causation, for purposes of proving a prima facie case of retaliation, may be established by close temporal proximity between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007); *see Amsel v. Tex. Water Dev. Bd.*, 464 Fed. Appx. 395, 401–02 (5th Cir. 2012) (stating that two months between the protected activity and the adverse employee action is insufficient alone to establish causation). Absent temporal proximity, the plaintiff can establish a prima facie case with other direct evidence of causation.

In this case, it is undisputed that Smith's protected activity—testifying in the 2007 Slaughter litigation—occurred two years prior to her termination. The exact temporal proximity necessary to establish a causal link in a Title VII retaliation case is somewhat unclear; however, the Court agrees with the defendants that two years is too attenuated to do so. After determining that causation cannot be established in this case based on temporal proximity, the Court next analyzes whether the other direct evidence presented creates a genuine issue of material fact regarding causation.

The Court spent considerable time reviewing the record evidence cited by the parties and comparing that evidence with the assertions being made in the parties' briefs. In doing so, it quickly became apparent that the plaintiff played fast and loose with the facts of this case. The plaintiff's brief is blanketed by arguments drawn from either intentional or negligent

mischaracterizations of the facts.[2] At the very least, the plaintiff continually miscited the record evidence necessary to substantiate the claims being made. However, it is not the role of this Court to search beyond the cited materials to find evidence that may create a genuine issue of material fact. The plaintiff must come forth with the necessary evidence to support their position. Fed. R. Civ. P. 56(c).

Furthermore, the arguments raised in the plaintiff's brief are not, themselves, competent summary judgment evidence—these arguments must be supported by concrete and specific facts in the record. Here, the conclusions reached by the plaintiff, in support for her claim that summary judgment is inappropriate, are unsubstantiated by the evidence the plaintiff cited to for those assertions. The plaintiff's speculative, vague, and generalized evidence is insufficient to create a genuine issue of material fact as to causation. Therefore, summary judgment is **GRANTED** as to the plaintiff's claim for Title VII retaliation.

The following examples are illustrative of the above-mentioned deficiencies:[3]

(1) Plaintiff's assertion: The "defendant *admitted* to the EEOC on July 27, 2012, that both Board Chair Clayton and Board member McGee specifically told Smith that Freeman wanted her gone because she 'wanted to have people around her that she could trust to be loyal to her.'" *Pl.'s Opp'n* 2, Doc. 17 (citing *Defs.' EEOC Response*, Doc. 17-3) (emphasis added).

---

[2] "By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or late advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: the factual contentions have evidentiary support . . . ." Fed. R. Civ. P. 11(b)(3).

[3] The assertions being quoted herein are only a sample of the problems discussed above. To explain every discrepancy would take far too much time and further waste judicial resources. As such, only some of the most blatant examples are provided. The Court notes that these assertions are being pulled from the "Facts" section of the plaintiff's brief, rather than the "Causation/Retaliation" discussion. The Court has done so for several reasons. First, the record citations for each assertion are only provided in the "Facts" section and therefore the similar assertions being made in the "Causation" discussion cannot be substantiated without a reference to these citations. Second, the plaintiff states that "this case presents direct evidence of retaliatory animus" and then goes on to list assertions in support for that conclusion, such assertions are consistent with those presented in the "Facts" section. Finally, the Court looked beyond the "Causation" discussion because it only provided a short explanation of the claim for retaliatory animus. Therefore, the Court looked to other portions of the brief that may contain relevant arguments.

In reviewing the EEOC Response it is clear that the defendants did not make the alleged admission. Instead, in response to the above claim, the defendants answered: "Since September 5, 2005 Smith's position title as Assistance to the President (System Level) she served at the pleasure of President and the Board of Supervisors. Her employment is predicated o[n] the wishes of the President with the approval of the Board. It was Freeman's propagative [sic] to hire her staff as she sees fit." *Defs.' EEOC Response* 2, Doc. 17-3. Although this statement can be viewed as evasive, it is a mischaracterization of the evidence to state that the defendants "admitted" that Freeman said she wanted to fire Smith in order to have loyal people around her.

> (2) Plaintiff's assertion: "Freeman made it very clear that she wanted to hire young people and that Freeman 'thought she would be able to train them to do what she wanted them to do.'" *Pl.'s Opp'n* 4, Doc. 17 (citing *Smith Dep.* 47–50, Doc. 17-2).

The support for the above assertion appears to be this statement in Smith's own deposition: "[Freeman] tended to surround herself with young, inexperienced people. And she *seemingly, to me,* sought to just be surrounded by younger people. *I thought* it was primarily because of the inexperience that they would do what she kind of told them to do." *Smith Dep.* 47:19–24, Doc. 17-2 (emphasis added). Although Smith testified that Freeman replaced experienced older employees with inexperienced younger employees, the plaintiff's subjective belief as to why Freeman hired younger employees is insufficient to create a genuine issue of material fact.

> (3) Plaintiff's assertion: Smith stated that "shortly after Slaughter's departure in early July . . . she walked into Freeman's office and found Freeman, Dumas, and Tillman discussing terminating her." *Pl.'s Opp'n* 4, Doc. 17 (citing *Smith Dep.* 134–35, Doc. 17-2).

The cited portion of Smith's deposition does not support this assertion. Instead, in her deposition Smith stated that she walked into Freeman's office some time shortly after Freeman

9

became President and saw Freeman, Dumas, and Tillman "working on what [Smith] *later* realized was the [reorganization] plan." *Smith Dep.* 134–35, Doc. 17-2 (emphasis added). Smith later stated that although she heard the three of them talking about the Reorganization Plan, she "couldn't tell you what they were saying[.]" *Id.* at 135:13–21. The claim that Smith overheard these three discussing terminating her is unsubstantiated by Smith's testimony.

> (4) Plaintiff's assertion: "Freeman confirmed, regarding termination, that she/Freeman had done what the Board told her to do." *Pl.'s Opp'n* 4, Doc. 17 (citing *Smith Dep.* 165–68, Doc. 17-2).

The testimony cited to is too vague and attenuated to support the conclusion being drawn from it. Smith testified that she believes that "Attorney Dumas is one of the persons who gave directives to Dr. Freeman about what should transpire in the reorganization plan." *Smith Dep.* 165:15–18, Doc. 17-2. Smith went on to say that she based this conclusion "upon a comment . . . that Dr. Freeman made at the July board meeting following a statement that Mr. Dumas made." *Id.* at 165:20–24. Without explanation of what comment Dumas made, Smith stated that she overheard Freeman talking to an unknown person "about [how] she didn't know anything about this, I'm doing what they told me to do." *Id.* at 165–66. Smith concluded that "I *believe* that Dr. Freeman's statement that she did what they told her to means she interacted with board members and came up with a plan to carry out the directives that they gave her." *Id.* at 168:16–19 (emphasis added). Again, this conclusion represents Smith's subjective belief concerning a vague comment she overheard and is insufficient to create a genuine issue of material fact.

### b. Age Discrimination

To establish a prima facie case of age discrimination under the ADEA, a plaintiff must demonstrate that she was (1) discharged; (2) qualified for the position; (3) within the protected

10

class (i.e. over the age of 40) at the time of the discharge; and (4) either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of her age. *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993). The *McDonnell Douglas* burden-shifting framework applies to ADEA cases that rely on circumstantial evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, once the plaintiff establishes a prima facie case of age discrimination, the burden shifts to the employer to "articulat[e] a legitimate, nondiscriminatory reason for the discharge." *Bodenheimer*, 5 F.3d at 957 (citations omitted). At this stage, there is no credibility assessment—an employer meets its burden by providing admissible evidence of a legally sufficient explanation for its actions. *Id.* at 957–58; *see Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256–57 (stating that it is inappropriate to "place[] on the defendant the burden of persuading the court that it had convincing, objective reasons for [its actions]").

If the employer meets its burden, then the burden shifts back to the plaintiff to show that the employer's reasons are merely pretext. *McDonnell Douglas*, 411 U.S. at 804. To meet this burden under the ADEA, the plaintiff "must prove that the proffered reasons are not just pretexts but *pretexts for age discrimination*. . . . To prevail ultimately, the plaintiff must prove, through a preponderance of the evidence, that the employer's reasons were not the true reasons for employment decision *and* that unlawful discrimination was." *Bodenheimer*, 5 F.3d at 957. Pretext cannot be established by conclusory statements and subjective speculation—the plaintiff "must offer specific evidence refuting the factual allegations underlying [the employer's] reasons[.]" *Turner*, 476 F.3d at 345–46.

Here, it is undisputed that: (1) Smith was discharged; (2) Smith was qualified for the position; (3) Smith was within the protected class; and (4) Smith was replaced by someone

11

younger. *Defs.' EEOC Response*, Doc. 17-3. Therefore, for purposes of summary judgment, Smith has established a prima facie case of age discrimination under the ADEA and the burden shifts to the defendants to articulate a legitimate, non-discriminatory bases for termination.

The defendants have stated that Smith was terminated due to budget reductions and because Woods was more qualified for the new position created under the Reorganization Plan. *Id.* at 3 ("The move to replace Smith was not strictly on the bases of economics, she was replaced with an individual with considerably more experience and ability to perform [the] multiple functions [of the new position]."). The Court makes no assessment as to the credibility of the defendants' proffered reason; all that is required is a legally valid reason. Thus, the defendants have met their burden of providing a legitimate, non-discriminatory reason for Smith's termination.

Next, the Court considers whether Smith has provided sufficient evidence that the defendants' proffered reasons are pretext for age discrimination. As previously mentioned, many allegations relied on by Smith are speculative, vague, or unsubstantiated by the record. Similarly, Smith's claim that the defendants' proffered reasons for Smith's termination shifted over time is a mischaracterization of the cited record evidence. *See Pl.'s Opp'n* 9–10, Doc. 17 (citing *Defs.' EEOC Response*, Doc. 17-3 and *Freeman Aff.*, Doc. 12-4). On July 27, 2012, the defendants stated that the decision to terminate Smith was based on both qualifications and economic concerns. *Defs.' EEOC Response* 3, Doc. 17-3. On August 31, 2015, Freeman executed an affidavit discussing the Reorganization Plan and stating that terminating Smith and hiring Woods in the new position "affected a net savings of over $70,000 to the SUS operating budget." *Freeman Aff.* 3, Doc. 21-4. Smith contends that this evidence demonstrates a shift in the defendants' reasons from both economics and qualifications to *solely* economics. However,

12

Freeman's affidavit refers to both Woods qualifications for the new position and the money saved by hiring Woods. *Id.* at 3 (stating that Freeman knew Woods had "experience in higher education and corporate law" *and* that "[p]lacing Tracie Woods in the position of Executive Counsel and eliminating Frances Smith's position" saved $70,000). Thus, despite the plaintiff's contention, the evidence cited does not support the conclusion that the defendants have provided inconsistent or shifting reasons for Smith's termination.

As a basis for pretext, Smith further alleges that Woods was significantly less qualified than Smith. For example, Woods was only licensed to practice law in 2008 while Smith had been licensed for decades. Additionally, Smith had over 35 years of experience in higher education while Woods only briefly worked as a student worker and employee of an insurance company that insured schools. *Pl.'s Opp'n* 10, Doc. 17. In support for the claim of Woods' superior qualifications, the defendants state that Smith primarily served as an administrator while employed with Southern, not as an attorney for a business entity, whereas Woods has an MBA, served as General Counsel and provided legal advice to companies and government units, has practiced as an independent attorney, and has experience in a university setting as legal counsel. *Defs.' EEOC Response* 3, Doc. 17-3. According to the defendants, these qualifications were more appropriate for the new position for which they hired Woods. *Id.* The Court notes that all of the underlying facts concerning Smith and Wood's respective qualifications are undisputed. At issue is whether those facts create a genuine issue as to pretext. Even when viewed in the light most favorable to Smith as the non-moving party, the evidence presented does not create a genuine issue of material fact as no reasonable jury could conclude that the defendants' proffered reasons for Smith's termination were a pretext for age discrimination. Therefore, summary judgment is **GRANTED** on Smith's age discrimination claim.

## IV. CONCLUSION

For the reasons stated herein, the defendants' Motion (Doc. 12) for Summary Judgment is **GRANTED**.

Signed in Baton Rouge, Louisiana, on January 12, 2016.

     **JUDGE JAMES J. BRADY**
     **UNITED STATES DISTRICT COURT**
     **MIDDLE DISTRICT OF LOUISIANA**